UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DONNA K. HURST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:20-cv-00455-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Kilolo Kijakazi,* | ) | |
| *Acting Commissioner of Social Security,* [1] | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION AND ORDER</u>

Plaintiff Donna K. Hurst appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's final decision will be reversed, and the case remanded to the Commissioner for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

Hurst applied for benefits on October 19, 2018, alleging disability beginning July 4, 2009. (ECF 16 Administrative Record ("AR") 15, 165-71). Hurst was last insured for DIB on December 31, 2014 (AR 17, 186), and thus, she must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB).

Hurst's claim for DIB was denied initially and upon reconsideration. (AR 71-84). After a timely request (AR 104-06), a hearing was held on January 22, 2020, before administrative law judge ("ALJ")

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

Kathleen Winters, at which Hurst and a vocational expert testified (AR 32-70).[2]  On February 13, 2020,

the ALJ rendered an unfavorable decision to Hurst, concluding that she is not disabled because she could

perform a significant number of jobs in the economy despite the limitations caused by her impairments.

(AR 12-25).  Hurst's request for review was denied by the Appeals Council (AR 1-6), at which point the

ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Hurst filed a complaint with this Court in December 2020, seeking relief from the

Commissioner's decision.  (ECF 1).  In her appeal, Hurst alleges that the ALJ:  (1) failed to meet the

burden at step five; (2) erred in failing to incorporate all of her limitations into the residual functional

capacity (RFC); (3) erred in rejecting the opinion of the consultative examiner; (4) failed to include

qualitative limitations on interacting with coworkers and supervisors; and (5) "err[ed] by nitpicking that

misses the heart of real issues."  (ECF 25 at 2).

On her date last insured, Hurst was forty-six years old (AR 23), and the ALJ found that she was

incapable of performing her past relevant work as a sales clerk or a quality control inspector (*id.*).

However, the ALJ did find that jobs existed in significant numbers in the national economy that Hurst

could have performed.  (AR 23-24).  In her application, Hurst alleged disability due to bipolar disorder,

fibromyalgia, schizophrenia, anxiety, obsessive compulsive disorder (OCD), back impairments, arthritis,

joint locking, a stroke in 2015, chronic obstructive pulmonary disease (COPD), high blood pressure, and

high cholesterol.  (AR 190).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with

or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to

determining whether the ALJ's factual findings are supported by substantial evidence, which means "such

---

[2] Hurst was represented by Attorney Randal Forbes and his firm Forbes Rodman PC throughout the administrative process and this lawsuit.  (AR 15, 91; ECF 3, 4).  At the administrative hearing, Hurst was represented by Non-Attorney Representative Tara Budd of that same firm.  (AR 15, 32).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted).  "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

#### *A.  The Law*

Under the Act, a claimant seeking DIB must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to … last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing any work in the

national economy.[3]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §

404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that

the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at

any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.

*Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

Commissioner.  *Clifford*, 227 F.3d at 868.

### B.  The Commissioner's Final Decision

On February 13, 2020, the ALJ issued a decision that ultimately became the Commissioner's final

decision.  (AR 12-25).  At step one, the ALJ concluded that Hurst did not engage in substantial gainful

activity between July 4, 2009, her alleged onset date, and December 31, 2014, her date last insured.  (AR

17).  At step two, the ALJ found that Hurst had the following severe impairments as of her date last

insured:  status post surgery for cervical spondylosis, schizoaffective disorder, OCD, and social phobia.

(*Id.*).

At step three, the ALJ concluded that Hurst did not have an impairment or combination of

impairments severe enough to meet or equal a listing as of her date last insured.  (AR 18).  The ALJ then

assigned Hurst the following RFC:

> [T]hrough the date last insured, the claimant had the [RFC] to perform
> sedentary work as defined in 20 CFR 414.1567(a) except can occasionally
> climb stairs or ramps, balance, stoop, kneel, crouch, and can never crawl,
> or climb ladders, ropes, or scaffolds.  Must avoid concentrated exposure
> to humidity, unprotected heights, and moving machinery.  Work with a
> moderate level of noise.  Can frequently use the bilateral upper extremities.
> Work with an option to sit or stand, changing positions no more frequently
> than every 30 minutes, while remaining on task.  With work that can be
> learned in 30 days, or less; with simple routine tasks; simple work related
> decisions, routine workplace changes; occasional interaction with
> coworkers and supervisors, and no interaction with the general public.

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R. §§ 404.1520(a)(4), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 404.1520(a)(4).

(AR 20).  The ALJ found at step four that through the date last insured, Hurst was unable to perform her past relevant jobs.  (AR 23).  However, the ALJ found at step five that jobs exist in significant numbers in the national economy that Hurst could have performed through her date last insured, including addresser, document preparer, and table worker.  (AR 23-24).  Therefore, Hurst's application for DIB was denied.  (AR 24).

### C.  Concentrating, Persisting, or Maintaining Pace

Hurst alleges that the ALJ failed to properly account for her moderate limitations in concentrating, persisting, or maintaining pace.  (ECF 25 at 12; *see* AR 19).  Ultimately, Hurst's argument has merit, necessitating a remand of the Commissioner's final decision.

In general, the ALJ determines the severity of a claimant's mental impairment by assessing her degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Relevant to this appeal, the "paragraph B" criteria consist of four broad functional areas:  understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3): *see, e.g., Johnnie M. v. Berryhill,* No. 2:18-cv-00066-MJD-JMS, 2019 WL 521176, at *3 (S.D. Ind. Feb. 11, 2019); *Brynelson v. Berryhill*, 329 F. Supp. 3d 629, 638 n.6 (N.D. Ill. 2018).  "[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

"The mental RFC assessment … requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C …."  *Id.*; *see Virden v. Astrue*, No. 11-0189-DRH-CJP, 2011 WL 5877233, at *9 (S.D. Ind. Nov. 4, 2011).  That is, the RFC is an assessment of "what an individual can still do despite … her limitations," SSR 96-8p, 1996 WL 374184, at *2; *see* 20 C.F.R. § 404.1545(a)(1), and "must be based on *all* of the relevant evidence in the case record," SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. § 404.1545(a)(3).  "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even

those that are not 'severe.'"  SSR 96-8p, 1996 WL 374184, at *5; *see Paar v. Astrue*, No. 09 C 5169,

2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012).  Ultimately, though, "the RFC determination is one

firmly within the ALJ's discretion to determine, so long as [she] sufficiently articulates [her] reasoning

and the record adequately supports [her] conclusion."  *Terry v. Astrue*, No. 3:09-CV-503, 2011 WL

855346, at *17 (N.D. Ind. Mar. 7, 2011) (collecting cases).

At step three, the ALJ found that Hurst had a moderate limitation in concentrating, persisting, or

maintaining pace.  (AR 19).  In doing so, the ALJ relied on a note from consultative examiner David

Ringel, D.O., who observed that Hurst was constantly moving and had trouble sitting in one place for

more than a minute.  (*Id.* (citing AR 249-51)).  Dr. Ringel also noted rapid change of thought and

difficulty staying focused.  (*Id.*).  The ALJ further considered that during the psychological consultative

examination, Hurst could not complete serial sevens and had limited persistence.  (*Id.*).

The ALJ also noted that psychological consultative examiner Andrew Miller, Pys.D., HSPP,

observed poor concentration and below average frustration tolerance, but that Hurst was attentive to tasks

she was asked to perform.  (*Id.* (citing AR 244-48)).  The ALJ noted that Dr. Miller found Hurst put forth

a good effort.  (*Id.*).  The ALJ also relied on Dr. Miller's finding that Hurst's speech was logical and

coherent, and that she was cooperative in all aspects.  (*Id.*).  The ALJ then assigned the following mental

limitations in the RFC relevant to Hurst's difficulties with maintaining concentration, persistence, or

pace:

> [Hurst can] [w]ork with an option to sit or stand, changing positions no more frequently
> than every 30 minutes, while remaining on task.  With work that can be learned in 30
> days, or less; with simple routine tasks; simple work related decisions; routine workplace
> changes; occasional interaction with coworkers and supervisors; and no interaction with
> the general public.

(AR 20).  At the hearing, the ALJ posed hypotheticals to the VE that were identical to the RFC.  (AR 63-

68).

While the ALJ did not need to discuss each piece of medical evidence in the record, *see Knox v.

Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009), the ALJ must generally "include all limitations supported

by medical evidence in the record" in a hypothetical to the VE, *Young v. Barnhart*, 362 F.3d 995, 1003

6

(7th Cir. 2004).  The Seventh Circuit has instructed that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.").  Having said that, the Seventh Circuit has not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases."  *Id.* at 619.  The court explained:

> We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.  We most often have done so when a claimant's limitations were stress-or panic-related and the hypothetical restricted the claimant to low-stress work.

*Id.* at 619 (citing *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (upholding a hypothetical restricting the claimant to work involving low production standards and a low-stress environment, where the claimant's difficulties with concentration, persistence, or pace arose from stress-induced headaches, frustration, and anger); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (allowing a hypothetical formulated in terms of "repetitive, low-stress" work to stand, where the claimant's deficits in concentration, persistence, or pace stemmed from a panic disorder); *Sims v. Barnhart*, 309 F.3d 424, 427, 431-32 (7th Cir. 2002) (finding that the ALJ's restricting the claimant from jobs 'involving complex work processes or unusual levels of stress' adequately accommodated the claimant's concentration problems arising, in part, from a panic disorder)).

There is not much medical evidence in the record related to Hurst's mental health during the relevant period.  However, on January 2, 2013, Hurst underwent both physical and psychological consultative examinations.  (AR 244, 249).  The psychological examiner, Dr. Miller, found that Hurst was attentive to the tasks she was asked to perform, and she seemed to put forth good effort.  (AR 246).  He also found her to be cooperative, and her ability to interact with him was fair.  (AR 246).  The ALJ relied on this information, while still acknowledging that Dr. Miller found Hurst exhibited poor concentration

and below average frustration tolerance.  (AR 19, 247).  The ALJ also acknowledged that Dr. Miller found Hurst could not complete serial sevens and showed limited persistence.  (AR 19, 246).  However, the ALJ failed to consider the rest of Dr. Miller's narrative notes, and did not explain how Hurst's cooperation and fair ability to interact were more persuasive than Dr. Miller's finding that she had poor concentration and below average frustration tolerance.  Dr. Miller also noted poor eye contact, limited persistence, and limited insight into behavior and consequences of behavior during the evaluation.  (AR 246).  Dr. Miller also found Hurst to be a poor historian.  (*Id.*).  He opined that she would need a great deal of support to accomplish daily tasks, and her ability to complete tasks on a daily basis "appears to be substantially impaired."  (AR 247).  While Dr. Miller found that Hurst had good memory of task instructions and had sufficient understanding, she had poor concentration and would likely have difficulty in social interactions.  (*Id.*).  Finally, Dr. Miller noted that Hurst was unemployed, had insufficient finances, and lacked health insurance.  (*Id.*).

Hurst also attended a physical consultative examination on January 2, 2013.  (AR 249).  The examiner, Dr. Ringel, noted that Hurst struggled to sit still for more than a minute and exhibited constant movement during the examination.  (AR 250).  Dr. Ringel also indicated that Hurst had rapid change of thoughts throughout the examination, and that Hurst found it "hard to stay focused on one topic."  (AR 251).

While the ALJ acknowledged portions of both Dr. Miller and Dr. Ringel's opinions regarding Hurst's ability to maintain concentration, persistence, or pace, the ALJ failed to properly explain how these findings support the RFC determination.  The Seventh Circuit has held that in some cases, limiting a claimant to "simple routine tasks that do not require constant interactions with coworkers or the general public" may be insufficient to properly account for moderate limitations in maintaining concentration, persistence, or pace.  *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009).  This is due to a concern that using boilerplate language may create a "one-size-fits-all solution without delving into an individual assessment of the claimant's specific symptoms."  *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020) (citing *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020)).  Therefore, the Seventh Circuit has

"decline[d] to provide a glossary of adjective for use in RFC determinations," and instead requires only

that "the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC."

*Martin*, 950 F.3d at 374 (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)).  However,

"[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account

for moderate limitations in concentration, persistence, and pace, so long as they adequately account for

the claimant's demonstrated psychological symptoms found in the record."  *Urbanek v. Saul*, 796 F.

App'x 910, 914 (7th Cir. 2019) (citation and internal quotation marks omitted).

Here, the ALJ found that Hurst can complete work that can be learned in thirty days or less with

simple, routine tasks and simple work related decisions.  (AR 20).  She further found that Hurst can

perform work with routine workplace changes, occasional interaction with coworkers and supervisors,

and no interaction with the general public.  (*Id.*).  The ALJ also articulated that Hurst could remain on

tasks even with the option to change positions every thirty minutes.  (*Id.*).  While there is not much in the

medical record regarding Hurst's mental impairments, two separate doctors opined that she suffered from

poor concentration and persistence, as well as that she could not sit still.  (AR 244-47, 249-51).

The ALJ found Dr. Miller's psychological consultative opinion to be persuasive, finding it

consistent with the overall record for the relevant period.  (AR 22).  The ALJ explained that combined

with a lack of mental health treatment, Dr. Miller's opinion does not support greater limitations than those

in the RFC.  (*Id.*).  The ALJ also considered Dr. Ringel's opinion to be persuasive.  (AR 22).  However,

the ALJ found the state agency determinations to be not persuasive.  (AR 23).  The ALJ failed to

adequately explain how the RFC properly reflects the persuasive opinions of Dr. Miller and Dr. Ringel

with regard to Hurst's poor concentration and persistence.  The ALJ relies on Dr. Miller's findings that

Hurst was cooperative, attentive to the tasks she was asked to perform, and seemed to put forth good

effort.  (AR 19, 246-47).  Yet the ALJ fails to explain how those finding outweigh Dr. Miller's findings

that she showed poor concentration, limited persistence, and below average frustration during the

examination.  (*Id.*).

The ALJ also failed to explain how her cooperation and good effort outweighed Dr. Ringel's findings of constant movement, trouble sitting in one place for more than a minute, rapid change of thought, and difficulty staying focused.  (AR 19, 249-51).  The ALJ simply lists the evidence and fails to provide any analysis as to how she determined the RFC from this evidence.  The Court cannot determine the ALJ's thought process, as the ALJ failed to provide any real analysis about Hurst's mental impairments.  The ALJ did not build the requisite logical bridge from the evidence to her conclusion that Hurst could complete simple, repetitive work with occasional interaction with coworkers and supervisors. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

While it is possible that the ALJ's RFC determination does account for Hurst's moderate limitations in concentrating, persistence, or maintaining pace, it is impossible for the Court to determine due to the ALJ's failure to explain her reasoning or analysis.   On remand, the ALJ should explain how the evidence in both Dr. Miller's and Dr. Ringel's opinions regarding Hurst's concentration, persistence, or pace are accommodated by the RFC.  Both Dr. Miller and Dr. Ringel indicated that Hurst's concentration and persistence were significantly impaired, yet the ALJ found that Hurst could stay on task while switching from sitting to standing every thirty minutes.  The ALJ did not explain how these limitations are consistent with the two opinions she found to be persuasive.

The Commissioner responds by relying on the ALJ's findings that Hurst did not have any emergency or inpatient mental health treatment during the relevant period.  (AR 19).  However, this argument is unavailing for a variety of reasons.  As an initial manner, the ALJ fails to acknowledge Dr. Miller's finding that Hurst was not only unemployed, but she lacked health insurance and had insufficient finances for treatment.  (AR 247).  An ALJ can consider a lack of treatment in making her decision, but the ALJ is required to explore possible reasons for the lack of treatment before drawing any inferences about the severity of an impairment or any alleged limitations.  *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to obtain treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care."); *see also* SSR 16-3p, 2017 WL 5180304 at *9 (Oct. 25, 2017) ("We will not find an individual's

symptoms inconsistent with the evidence in the record [if the individual fails to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). The ALJ failed to do so here. The ALJ did not explore any reasons for Hurst's failure to obtain mental health treatment either at the hearing or in the decision, and the decision is void of any acknowledgment of Dr. Miller's notation that Hurst lacked both finances and health insurance.

Moreover, the ALJ found that Hurst suffered from the severe impairment of social phobia. (AR 17). Yet the ALJ never examined whether Hurst's social phobia played a role in her lack of treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."). If either Hurst's mental health impairments or her financial situation played a role in her apparent lack of treatment, then any adverse inferences based on lack of treatment is improper.

In sum, the ALJ erred in analyzing Hurst's mental impairments. As a result, a remand is warranted for reconsideration of Hurst's mental impairments and their impact on the RFC.[4]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Hurst and against the Commissioner.

SO ORDERED.

Entered this 11th day of July 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[4] Because a remand is warranted for reconsideration of Hurst's mental impairments, the Court need not reach Hurst's remaining arguments. Further, Hurst's remaining arguments regarding the RFC rest on a proper consideration of her mental impairments, opinion evidence, and errors at step five. Therefore, a proper consideration of her mental impairments and the medical evidence may impact those remaining arguments.